IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

GARY BILLINGS, Limited Guardian of  )
the person of DONALD BILLINGS,      )
an incapacitated person,            )
                                    )
             Plaintiff,            )
                                    )
vs.                                 )   Case No. CIV-10-372-M
                                    )
CONSECO HEALTH INSURANCE            )
COMPANY,                            )
                                    )
             Defendant.            )

## ORDER

This case is scheduled for trial on the Court's March 2012 trial docket.

Before the Court is defendant's Motion for Summary Judgment, filed January 3, 2012. On January 24, 2012, plaintiff filed his response, and on February 3, 2012, plaintiff filed his supplemental response. On February 10, 2012, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction

On or about October 16, 2007, Donald Billings executed an application for insurance to defendant Conseco Health Insurance Company ("Conseco") for a Heart/Stroke policy (the "Application"). In the Application, the following inquiry was posed:

> Has anyone proposed to be insured ever had, been treated for, or been diagnosed as having: any heart disease, a heart condition, angina or a heart attack; any disorder, disease or abnormality of the coronary arteries; arteriosclerosis; chronic disease of the pericardium; transient ischemic attack; stroke, whether or not resulting in paralysis?

Application at p.2, attached as Exhibit 1 to Conseco's Motion for Summary Judgment. Donald Billings responded "NO" to the above inquiry. Based on the representations in the Application,

Conseco issued a Heart/Stroke policy of insurance to Donald Billings on or about October 17, 2007 (the "Policy"). The Policy contained the following "GENERAL PROVISION":

> We rely on the statements made in the application when issuing this policy. After this policy has been in force for you for two years, we cannot cancel it or refuse to pay benefits for losses commencing after such time because of any misstatements in the application unless the applicant knowingly made them.

Policy at p.10, attached as Exhibit 1 to Conseco's Motion for Summary Judgment.

On August 2, 2009, Donald Billings suffered symptoms of a stroke and was taken to Seiling Municipal Hospital, where various tests were run and whose records indicate that Donald Billings' diagnosis was "multiple strokes." Donald Billings was sent home but returned to Seiling Municipal Hospital a couple of days later, after passing out at a neighbor's house. After spending several days at Seiling Municipal Hospital, Mr. Billings had himself discharged to go to the Veterans Administration ("VA") Hospital in Oklahoma City. The VA doctors also determined that Donald Billings had suffered strokes, "persistent neglect of the left side" and gait abnormality. Mr. Billings was a patient at the VA Hospital from August 6 to September 17, when he was discharged to Grace Living Center, a skilled nursing facility. Mr. Billings was a patient at Grace Living Center until they exhausted the rehabilitative care they could provide. On approximately December 21, 2009, Donald Billings was transferred to Seiling Nursing Center, where he currently resides.

On August 20, 2009, Conseco received notice of Donald Billings' stroke and, thereafter, sent Gary Billings, Donald Billings' son and guardian, the claim forms for submitting a claim under the Policy. On or about October 21, 2009, Gary Billings submitted a claim to Conseco for benefits under the Policy and included the following documents: an executed power of attorney form, an executed medical authorization, an executed Cancer, Alternative Care, Intensive Care and

Heart/Stroke Claim Form, a photocopy of Donald Billings' driver's license, and a medical bill and records from Seiling Municipal Hospital. Additionally, in support of the claim, Gary Billings submitted a physician's statement, dated October 2, 2009, from Dr. Hester, who marked "yes" for stroke. Patrice McCloud was the adjuster who handled Mr. Billings' claim. Ms. McCloud states that she reviewed the physician's statement and misread the "date of treatment" for a stroke to be "8/2/07" instead of "8/2/09." On October 23, 2009, Claim 705414 and Claim 705373 were created.[1]

On October 27, 2009, Gary Billings submitted additional medical records from the VA Hospital in support of his claim. Included in this submission was a physician's statement by Dr. Rabadi, VA Hospital, who marked that Donald Billings had suffered from a stroke. Additionally, the VA Discharge Summary identified a right ischemic stroke, acute onset of left side weakness throughout the body, and mixed fiber peripheral sensory neuropathy with gait abnormality, as well as old left MCA, right frontal, and right cerebellar strokes.

On November 11, 2009, Claim 705414 was denied based on Conseco's determination that the services provided were for the treatment of another condition. Ms. McCloud has testified that she made a "mistake" in processing Claim 705414, because she simply input the first two diagnosis codes of Dr. Hester's physician's statement and did not include the other two diagnosis codes, one of which was a diagnosis code for stroke. On November 16, 2009, Gary Billings submitted additional medical records in support of his claim, including a physician's statement by Dr. David Fisher, Grace Living Facility, who also marked "yes" for stroke. On December 23, 2009, Claim 705373 was "closed" because allegedly Conseco had not received the requested information.

---

[1]Conseco has a claim-handling system in place that creates various claim numbers based on document "bundles" that are received. During the handling of Donald Billings' request for benefits under his policy, Conseco created five different claim numbers.

Also on December 23, 2009, Conseco created Claim 201465 and subsequently denied the claim on January 5, 2010, because the expense submitted was not one of the listed policy benefits. On January 15, 2010, Conseco created Claim 297784, but the claim was "closed" on March 19, 2010 because Conseco allegedly had not received the previously requested information. On March 31, 2010, Conseco created Claim 669224.

According to Conseco, based upon Ms. McCloud's misreading of the dates and based on the medical information indicating possible prior strokes, Conseco began an investigation to see whether Donald Billings had materially misrepresented his medical history in the Application when he answered "NO" to the underwriting question involving cardiac and stroke history. As part of the investigation, Conseco wanted to review Donald Billings' medical records for the five years prior to his October 2007 application for insurance. According to plaintiff, Ms. McCloud did not begin this investigation based upon medical record information but began the investigation in compliance with Conseco claims handling processes that require an investigation into a possible rescission of the policy on all claims made within the first two years of issuance of the policy.

Conseco asserts that it finally received Donald Billings' prior medical records on July 19, 2011, reviewed them in light of the potential rescission of the Policy, and advised Mr. Billings on August 15, 2011, that Conseco was not going to rescind the Policy despite material misrepresentations in the Application. Subsequent to this determination, Conseco processed Mr. Billings' claims for benefits under the Policy and, on August 23, 2011, issued a check for benefits in the amount of $19,974.13, including interest.

On April 13, 2010, plaintiff brought the instant action, alleging a single claim of bad faith against Conseco for its handling of Donald Billings' claim for benefits under the Policy. Conseco now moves for summary judgment as to plaintiff's bad faith claim.

II.   Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

The Oklahoma Supreme Court first recognized the tort of bad faith by an insurer in the case of *Christian v. Am. Home Assurance Co.*, 577 P.2d 899 (Okla. 1978). In so doing, the court held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the

violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Id.* at 904. The court further recognized:

> there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*Id.* at 905.

In order to establish a bad faith claim, an insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). In order to determine whether the insurer acted in good faith, the insurer's actions must be evaluated in light of the facts the insurer knew or should have known at the time the insured requested the insurer to perform its contractual obligation. *Id.* at 1437. The essence of the tort of bad faith is

> unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences might be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

*McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

However, the mere allegation that an insurer breached its duty of good faith and fair dealing does not automatically entitle the issue to be submitted to a jury for determination. *Oulds*, 6 F.3d at 1436. The Tenth Circuit has held:

> [a] jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Id.* at 1436-37 (internal citations omitted).

"A claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611-12 (10th Cir. 1994). "To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances. If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable." *Id.* at 612 (internal quotations and citation omitted). Thus, "[t]he investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith." *Oulds*, 6 F.3d at 1442.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Conseco acted in bad faith and violated its duty to deal fairly and act in good faith with plaintiff. Specifically, the Court finds that plaintiff has submitted sufficient evidence of Conseco's investigation and handling of plaintiff's claim from which a jury could reasonably conclude that Conseco acted in bad faith in conducting the investigation and handling of plaintiff's claim.

During Conseco's investigation and handling of plaintiff's claim, Conseco opened five separate claims regarding the singular event of Donald Billings' stroke and "closed" and denied a number of these claims for reasons that were not supported by the documentation that had been received by Conseco. For example, Conseco denied claim 705414 on November 11, 2009, stating that the services provided were for the treatment of another condition – it is undisputed that Donald Billings had a stroke with paralysis; however, Conseco's adjuster only imputed the first two diagnosis codes on the medical bill, rather than all diagnosis codes.

Additionally, Conseco repeatedly sent generic system-generated letters requesting the same information over and over again, even when Conseco already had what it was requesting. Conseco sent the same generic request to Dr. Hester for medical records for the past 5 years on eleven separate occasions (even after Dr. Hester had sent two copies of all of Donald Billings' medical records). Further, during the same time period, Conseco sent Donald Billings a generic letter stating that Conseco had not received a complete proof of loss and more information was needed from Dr. Hester on eight separate occasions. Additionally, and even more confusingly, Conseco sent Donald Billings a request for VA Hospital records "for the date 9-9-07 when you were first treated for a stroke."[2] As a result, from October 21, 2009 to March 30, 2010, Gary Billings sent Conseco four executed power of attorneys, five executed medical authorizations, three completed claim forms, a VA Medical Records Release, VA medical records, and numerous other medical records from the healthcare providers who treated him for the strokes, and Dr. Hester sent Conseco two copies of the records from Seiling Municipal Hospital.

---

[2]Donald Billings was never treated for and never had a stroke on 9-9-07.

During this same time period, Conseco asserts that it was unable to complete its investigation as to whether Donald Billings had materially misrepresented his medical history in the Application when he answered "NO" to the underwriting question involving cardiac and stroke history because it had not received Donald Billings' medical records for the five years prior to his October 2007 application for insurance. Plaintiff has submitted evidence showing that although Conseco had multiple executed medical authorizations and was aware of additional medical providers, Conseco never sought to obtain the needed medical records on its own. Further, the evidence submitted shows that Conseco did not specifically request Donald Billings' medical records for the five years prior to his October 2007 application for insurance from Mr. Billings himself until April 21, 2010, after the instant action was filed.

Accordingly, the Court finds that Conseco is not entitled to summary judgment on plaintiff's bad faith claim.

IV.     Conclusion

For the reasons set forth above, the Court DENIES Conseco's Motion for Summary Judgment [docket no. 55].

**IT IS SO ORDERED this 22nd day of February, 2012.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE